UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JODY E. BURKE,

    Plaintiff,

v.                                            Case No. 1:10-cv-871
                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on August 1, 1971 (AR 184).[1] He completed the 11th grade (AR 193). Plaintiff alleged a disability onset date of August 19, 2006 (AR 184). He had previous employment as a factory assembler, oil change technician and store manager (AR 42-43, 190). Plaintiff identified his disabling conditions as being learning disabled and having a left foot injury (AR 189). Due to these conditions, plaintiff stated that he cannot stand or put pressure on his left foot and cannot read or write very well (AR 189). On July 14, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 21-32). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 19, 2006 and has met the insured status requirements of the Social Security Act through March 31, 2010 (AR 23). At step two, the ALJ found that plaintiff suffered from severe impairments as follows: a history of a left calcaneus fracture and regional pain syndrome; depression; and borderline intellectual functioning (AR 23). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02 (major dysfunction of joint(s) (due to any cause)), 12.04 (affective disorders) and 12.05 (mental retardation) (AR 23-24).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform sedentary work "except that he is limited to the performance of simple, unskilled tasks due to the mood disorder" (AR 25). The ALJ further found that plaintiff could not perform any of his past relevant work (AR 30). At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 31-32). Specifically, plaintiff could perform 33,200 jobs in the regional economy such as bench sorter (21,000 jobs); bench worker (4,200 jobs); and assembler (8,000 jobs) (AR 31). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 19, 2006 through the date of the decision (July 14, 2009) (AR 32).

### III. ANALYSIS

Plaintiff raised four issues on appeal.[2]

### A. Whether the Commissioner erred as a matter of law in applying the "Attending Physician Rule."

The ALJ found that plaintiff's orthopedic issues did not meet the level of severity described in Listing 1.02 "because the medical evidence in the record does not indicate that he was unable to ambulate effectively for the requisite twelve month period" (AR 24). Plaintiff contests this finding on the ground that the ALJ failed to address the opinions of his treating orthopedic surgeon, James Ringler, M.D.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *See generally, Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In

---

[2] Plaintiff's 34-page brief exceeds the 20-page limit set by the court's order directing filing of briefs. *See* Order (docket no. 9). Plaintiff and his counsel are advised that the court may strike future briefs which exceed the length specified in the court's order.

5

summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 1. Plaintiff's treatment with Dr. Ringler

On November 30, 2006, Dr. Ringler treated plaintiff's left calcaneus fracture by performing an open reduction and internal fixation of the left calcaneus (AR 259, 267-83). Dr. Ringler continued to treat plaintiff, and on May 9, 2007, submitted a Medical Examination Report to the Michigan Department of Human Services (AR 325-327, 331-33).[3] In this report, Dr. Ringler stated that plaintiff's condition was stable and that he could bear weight "as tolerated" (AR 331-32). The report included an attachment with four questions. In response to these questions, the doctor indicated that plaintiff could perform sedentary work with the following restrictions: if plaintiff was employed on a full-time basis, he would require a sit-stand option; and that he was suited for part-time work if sedentary work was not available (AR 333). While the doctor indicated that fracture "results in the inability to ambulate effectively" and that "a condition which will likely persist for 12 months or more ([Listing] 1.06)," the doctor did not answer a related question asking whether the patient required "a cane or other hand-held device to ambulate" (AR 333).

---

[3] The court notes that this report appears twice in the administrative record, as part of the agency's Exhibits 11F and 12F.

### 2. The ALJ's review of Dr. Ringler's opinion

Contrary to plaintiff's contention, the ALJ addressed Dr. Ringler's May 9, 2007 opinion, as well as the doctor's treatment of plaintiff's injury. The ALJ discussed plaintiff's injury (a joint depressed calcaneus fracture on the left that occurred on October 29, 2006) and his subsequent surgery in November 2006 (AR 25). The ALJ noted that in January 2007, plaintiff had minimal discomfort on toe touch weight bearing and that he could plantar flex and dorsiflex without difficulty (AR 26). The ALJ addressed Dr. Ringler's opinion as follows:

> . . . In a report dated May 9, 2007, the orthopedic surgeon indicated that the claimant had been examined on April 10, 2007. He had developed a regional pain syndrome. He was weight-bearing "as tolerated." The surgeon indicated that the claimant was prescribed neurontin and Motrin. The surgeon completed a form that is somewhat contradictory in that at one point he indicated that the claimant would need a "sit/stand" option if employed on a full-time basis, but later indicated that the claimant would be best suited for sedentary work (Ex. 11F, page 14).
>
> The report contained in Exhibit 11F was completed less than seven months after the date of his injury. According to the claimant's statements, he has not been back for follow-up due to a lack of insurance coverage.
>
> In my opinion, the evidence in the record establishes that the claimant had regained the functional capacity to perform at least sedentary work within twelve months of the date of the injury. He claims that he is unable to stand or walk for prolonged periods. However, there is nothing in the record that would suggest that the claimant has an impairment that would significantly interfere with the claimant's ability to sit throughout a typical workday, with ordinary rest breaks, or to use the upper extremities for basic work-related activities.

(AR 26). The ALJ specifically addressed not only Dr. Ringler's May 9, 2007 report, but his treatment records leading up to that report. The ALJ articulated good reasons for rejecting that report, both in terms of plaintiff's prior medical treatment and contradictions within the report itself.

### 3.     The ALJ's duty to re-contact Dr. Ringler

Finally, while plaintiff wants the court to adopt the Dr. Ringler's opinion to the extent that it supports his claim of disability, he also wants the ALJ to reject that portion of the doctor's report which concludes that plaintiff can perform sedentary work.  The plaintiff faults the ALJ for accepting the doctor's conclusion and contends that the ALJ should have re-contacted Dr. Ringler to clarify his use of the term "sedentary work".  *See* Plaintiff's Brief at p. 18.   Plaintiff cites SSR 96-5p, which provides in pertinent part:

> From time-to-time, medical sources may provide opinions that an individual is limited to "sedentary work," "sedentary activity," "light work," or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability.  Adjudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of our definitions of these terms.  The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.

SSR 96-5p, 1996 WL374183 at *5.   Plaintiff asserts that:

> Finally, under these circumstances, S.S.R. 96-5p, *supra*, and 20 C.F.R. 404.927(C)(3) provides [sic] that the ALJ should re-contact the treating source for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear.  Here, the ALJ failed to follow the regulation by not re-contacting the treating physician to clarify the ambiguity.

Plaintiff's Brief at p. 18.

The regulation cited by plaintiff, 20 C.F.R. §404.927(C)(3) does not exist; 20 C.F.R. § 404.927 pertians to the "Effect of expedited appeals process agreement."  Plaintiff is apparently referring to 20 C.F.R.  § 416.927(c)(3), which provides that:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or, if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 416.912 and 416.919 through 416.919h.  We

> will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

The court disagrees with plaintiff's contention that the ALJ was required to re-contact Dr. Ringler to clarify the doctor's use of the term "sedentary work." Under the regulations, an ALJ should seek out additional information only when the evidence received from the treating physician "is inadequate for us to determine whether you are disabled." 20 C.F.R. § 416.912(e). Here, there is no indication that the ALJ found Dr. Ringler's opinion inadequate or that there was insufficient evidence in the record to determine disability. Furthermore, the ALJ did not simply adopt Dr. Ringler's opinion that plaintiff could perform sedentary work. The ALJ reviewed plaintiff's treatment history to conclude that plaintiff could perform sedentary work (e.g., the ALJ noted that "there is nothing in the record that would suggest that the claimant has an impairment that would significantly interfere with the claimant's ability to sit throughout the typical workday, with ordinary rest breaks, or to use the upper extremities for basic work-related activities") (AR 26). Accordingly, plaintiff's claims of error with respect to the ALJ's evaluation of Dr. Ringler should be denied.

> **B.    Whether the Commissioner erred in failing to consider all impairments and erred in failing to consider the combined effects of all impairments.**

Plaintiff raises three sub-issues in this argument. Plaintiff points out that a psychological assessment of plaintiff performed at Western Michigan University (WMU) on December 12, 2007, included diagnoses of: major depressive disorder, single episode, severe without psychotic features; ADHD, combined type; and mild mental retardation (AR 341-47). As part of the examination, plaintiff was tested using the Wechsler Adult Intelligence Scale - Third

Edition (WAIS III), which resulted in a verbal scale IQ score of 61, a full scale IQ score of 61, and a performance scale IQ score of 69 (AR 344).

Plaintiff's counsel apparently referred him to another psychologist, Victor Wagner, Ph. D., for an examination on March 6, 2009 (AR 349-57). Dr. Wagner offered a somewhat different diagnosis: bipolar II disorder; pain disorder associated with psychological and general medical condition; post traumatic stress disorder; and mild mental retardation (AR 351). Based on his interview with plaintiff and the 2007 IQ scores, Dr. Wagner opined that plaintiff met the requirements of Listing 12.05 (mental retardation) (AR 352). Although Dr. Wagner had no records from plaintiff's childhood, based on plaintiff's statement that he was in special education since elementary school, and plaintiff's 2007 IQ scores, the doctor opined that "I.Q. [sic] is essentially stable over time and the likelihood is that the low IQ in the assessment at Western Michigan would be comparable to the IQ that [plaintiff] would have shown as a youth if a test had been administered" (AR 350, 352). For these reasons, the doctor felt that plaintiff met the diagnostic criteria for mental retardation under Listing 12.05 (AR 352). Despite these opinions, plaintiff contends that the ALJ's decision failed to address his ADHD, improperly found that plaintiff failed to meet the listed requirement for mental retardation (Listing 12.05), and failed to consider the combined effects of all his impairments.

### 1.    The ALJ's decision regarding plaintiff's mental impairments

Contrary to plaintiff's claim, the ALJ addressed his December 12, 2007 examination at WMU and discussed the diagnoses of depression, ADHD and mental retardation (AR 26-28). The ALJ also addressed Dr. Wagner's report in detail (AR 28-29). After reviewing these assessments, the ALJ concluded that plaintiff did not meet the Listing requirements for a mood disorder or mental

retardation. Given the length and detail of the ALJ's reasoning, the court will copy this portion of the ALJ's decision in its entirety:

> While I have considered these psychological assessments, I note that they are based to a great extent upon reports from the claimant that are not corroborated by any supporting documentation such as school records or contemporaneous records from treating sources. As noted above, Section 12.05 of the Listing of Impairments provides that mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. Section 12.00D6 provides that the results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.
>
> In this case, the only psychological test results were obtained when the claimant was 36 years of age, long after the developmental period. A review of his earnings record indicates that he had earnings that exceeded the amount indicative of substantial gainful activity in many years with earnings in excess of $24,000.00 in 2000 and 2001 (Ex. 7D). He testified that he was a as a [sic] manager in an automobile lubrication business and that job duties included supervising and training other employees. opening and closing the shop, taking receipts to the bank, and operating a computer to prepare work orders and to prepare estimates for customers. A third party indicated that gets along fairly well with authority figures, follows oral instructions without problems, and that he is able to pay bills, handle a checking/savings account, and count change. He is able to drive a car (Ex. 3E). While employed, he apparently was able to live on his own without any assistance. Although he reports a history of juvenile offenses, there is no report of any involvement with the legal system as an adult. The evaluators who completed Exhibit 13F and Dr. Wagner indicated that the claimant was able to travel to the sites of the examinations by himself. He was able [sic] persist and complete a rather lengthy battery of tests. This evidence clearly undermines any diagnosis of mental retardation.
>
> I also find that the signs and symptoms of a mood disorder are based almost entirely on the claimant's self-report. The claimant has never had any psychological hospitalizations or mental health therapy. Absent corroborating evidence for treating sources, I do not give great weight to opinions of examining sources that saw the claimant for the sole purpose of creating supportive evidence.

> Consequently, I conclude that the claimant does not meet the diagnostic criteria for mental retardation (and consequently does not meet Listing 12.05C or D) and is at least capable of performing simple, repetitive tasks in spite of any cognitive or affective disorder.

(AR 30).

### 2. ADHD

The ALJ noted that the WMU examination indicated that plaintiff met several criteria consistent with ADHD (AR 27-28). However, Dr. Wagner did not reach this diagnosis (AR 28-29). the ALJ noted that plaintiff had no history of psychological hospitalizations or mental health therapy (AR 30). The ALJ observed that plaintiff's complaints of mood disorders were based almost entirely on his self-reporting, that he had engaged in substantial gainful activity for many years, and that he had a history of managing other employees (AR 30). In the absence of corroborating evidence from treating sources, the ALJ did not give great weight to the opinions of the medical sources who examined plaintiff to create supporting evidence (AR 30). Based on the record, the ALJ concluded that plaintiff was capable of performing, simple, repetitive tasks "in spite of any cognitive or affective disorder" (AR 30). While the ALJ did not explicitly address all facets of plaintiff's diagnosis of ADHD, his decision considered it and found that none of plaintiff's mental conditions precluded employment.

### 3. Mental retardation

The ALJ concluded that plaintiff did not meet the requirements to be deemed disabled under Listing 12.05 (mental retardation) (AR 23-24, 30). A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that

his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

> Listing 12.05 provides in pertinent part as follows:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff has not presented any evidence that he was diagnosed with mental retardation before age 22. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria. . . .' 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) [noting that "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation"]"). Furthermore, the ALJ adequately addressed plaintiff's claim of ADHD (noting that plaintiff "is at least capable of performing simple, repetitive tasks in spite of any cognitive or affective disorder"(AR 30)). Accordingly, the ALJ did not err in finding that plaintiff failed to meet the requirements of Listing 12.05.

### 4. The ALJ failed to consider the combined effects of all impairments

Plaintiff's claim that the ALJ failed to consider the combined effects of all impairments is without merit. The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). *See* 20 C.F.R. § 404.1523.[4] The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ

---

[4] 20 C.F.R. § 404.1523 provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and, all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

Here, the ALJ stated that the regulations require him to consider plaintiff's "impairment or combination of impairments" in determining whether plaintiff is disabled (AR 22). Throughout the decision, the ALJ referred to plaintiff's "impairments," discussed the impairments individually and stated that he reached his decision after "careful consideration of the entire record" (AR 21-32). In addition, the ALJ specifically found that "the claimant had no impairment or combination of impairments that meets or medically equals one of the listed impairments" (AR 23). *See Loy*, 901 F.2d at 1310 ("ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of impairments in combination, where the ALJ specifically refers to 'combination of impairments' in finding that the plaintiff does not meet the listings"). Accordingly, the ALJ's decision indicates that he considered the combined effects of plaintiff's impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592.

### C. Whether the Commissioner erred in ignoring lay testimony supported by evidence of record and improperly assessed Mr. Burke's credibility.

Plaintiff notes that non-medical evidence from lay witnesses may play a vital role in the determination of the effects of a mental impairment. *See* SSR 85-16 (Titles II and XVI: Residual Functional Capacity for Mental Impairments), 1985 WL 56855 at *4 (1985) ("[t]o arrive at an overall assessment of the effects of mental impairment, relevant, reliable information, obtained from third party sources such as social workers, previous employers, family members, and staff members of halfway houses, mental health centers, and community centers, may be valuable in assessing an individual's level of activities of daily living").

Plaintiff contends that the ALJ ignored the lay testimony of his live-in girlfriend, Amy Post, who testified as a witness at the hearing (AR 63-68). As an initial matter, plaintiff's contention is factually incorrect. The ALJ referred to a February 14, 2007 third-party function report from Ms. Post regarding plaintiff's daily activities and abilities (AR 196-203). Ms. Post indicated that she knew plaintiff for 17 years, and that while he had some problems with a supervisor and did not deal well with stress and changes in routine, he got along with fairly well with authority figures (AR 26, 202). Ms. Post also stated that plaintiff had trouble with written instructions but did all right with spoken instructions (AR 26, 201). Plaintiff is able to drive a car, pay bills, handle a checking or savings account and to count change (AR 26, 199). The ALJ did not explicitly address Ms. Post's testimony at the administrative hearing, in which she indicated that plaintiff had more severe restrictions than those identified in her written report (AR 63-68). For example, Ms. Post testified that plaintiff lost his most recent job (at Meijer) because he was not working fast enough (AR 64). Ms. Post stated that she does the majority of the housework, that they do not have a car and that her mother drives them around (AR 64-65). Ms. Post has known plaintiff since high school,

characterized him as having a learning disability and as being "slow," and stated that she helped him fill out paperwork and applications (AR 67). When asked about plaintiff's job as a manager at the oil and lube business, Ms. Post stated that she did not think he was managing the business on his own (AR 67).

The ALJ's decision referred to Ms. Post's third party function report. Although the ALJ's decision did not refer to Ms. Post's live testimony, this does not demonstrate that the ALJ "ignored" her testimony as claimed by plaintiff. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). However, it is unnecessary for the ALJ to address every piece of evidence. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted); *Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Accordingly, plaintiff's claim that the ALJ ignored Ms. Post's testimony should be denied.

> **D.**   **Whether the Commissioner erred in postulating an RFC that did not consider all non-exertional limitations or assess exertional and non-exertional impairments on a function-by-function basis by summarily finding that Mr. Burke is limited to "simple, routine, repetitive tasks due to a mood disorder."**

Plaintiff contends that the ALJ failed to complete a function by function analysis of plaintiff's RFC as required by SSR 96-8p, 1996 WL 374184.[5] RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530. SSR 96-8p states that "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96-8p, 1996 WL 374184 at *5. Each exertional function (sitting, standing, walking, lifting, carrying, pushing and pulling) must be considered separately. *Id.* Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength such as: postural (e.g., stooping and climbing); manipulative (e.g., reaching and handling); visual; communicative (hearing and speaking); mental (e.g., understanding and remembering instructions and responding appropriately to supervision); and the ability to tolerate environmental factors (e.g., tolerance of temperature extremes). *Id.* at *5-*6.

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted). Here, the ALJ met the requirements for articulating the RFC determination as discussed in *Delgado* by reviewing plaintiff's medical history and functional limitations with respect to his physical and mental impairments, resulting in his RFC determination that plaintiff could perform simple, unskilled tasks due to the mood disorder (AR 21-32). As noted in earlier parts of this report, the ALJ: discussed plaintiff's physical injury, treatment of that injury

and resulting limitations  (AR 25-26); discussed plaintiff's mental assessments performed in December 2007 and March 2009 and the limitations reflected in those assessments (AR 27-30); discussed plaintiff's work history and daily activities (AR 25, 28, 30); and explained the basis for his determination of plaintiff's RFC (AR 24-30).  Accordingly, the ALJ did not err by failing to perform a function-by-function analysis of plaintiff's RFC.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  January 27, 2012                     /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).